05-3302 Greenspan v. Department of Veterans Affairs Mr. Hess. May it please the Court. Robert Hess for Petitioner Dr. Bennett Greenspan. This case concerns disciplinary actions taken by the Veterans Administration against Dr. Greenspan. Dr. Greenspan is a board certified radiologist. He was elected as medical staff representative for the Harry S. Truman VA's hospital and in that capacity was to act and relay concerns to the administration that the physicians of the hospital had. He was also a whistleblower and had been designated as a whistleblower by the Inspector General for the VA. He had made comments in late 1998, sent letters to the VA Office of the Inspector General and was subsequently designated as an Inspector General. The Veterans Administration Hospital is within a Veterans Integrated Service Network, which is referred to as a VISN, it's an acronym. The Harry S. Truman Hospital in Columbia, Missouri was in VISN 15, which was headed by Patricia Cressetti. And a lot of Dr. Greenspan's complaints governed leadership of the VISN and Ms. Cressetti specifically. March 1999, Ms. Cressetti was present in a staff meeting where Dr. Greenspan reiterated many of the complaints that he'd made in his letters and for which he had been designated a whistleblower. The agency subsequently took two disciplinary actions against him. They reprimanded him and they lowered his score on his proficiency report for personal qualities. The issue in this case is whether the VA would have taken the same actions against Dr. Greenspan in the absence of his protected disclosures. Dr. Greenspan was reprimanded for making unfounded and defamatory comments. In the agency's table of penalties, that is offense number 24. There is a separate offense, offense number 16, for being disrespectful. Throughout the proceedings, the agency has introduced evidence of Dr. Greenspan's disrespectfulness to support the claim that he made unfounded and defamatory conduct. The administrative judge admitted that. That was error. And our first point on appeal is that should be reversed. We moved to eliminate before the trial to have evidence of the disrespectfulness excluded because it was not charged conduct. The agency has persisted. The administrative judge allowed the evidence in. In his 21-page opinion, only one paragraph focuses on whether Dr. Greenspan's comments were unfounded and defamatory. The bulk of the evidence relates to his disrespectfulness. There's a Merit Systems Protection Board case, which is directly on point, Hawkins v. Smithsonian Institute, where the employee was charged with insolence and rudeness. The agency sustained the charge of insubordination, which was uncharged conduct. The Merit Systems Protection Board reversed because you cannot convict an employee of conduct you did not charge him with. And that's our first point of error. In addition, the evidence presented did not support that the agency would have disciplined Dr. Greenspan absent his protected disclosures. As regards the reprimand, his claims were founded. They weren't baseless. There were two comments that they claimed were unfounded. First, he alleged Ms. Cresetti was guilty of nepotism, committed nepotism, and he founded his claims on the following facts. Ms. Cresetti was head of the VISN. Her husband, Richard Cresetti, was appointed chief dental advisor for the VISN. Staff had relayed concerns to Dr. Greenspan in his capacity as medical staff representative about the relationship, and Dr. Greenspan had submitted those complaints to the inspector general, and the inspector general was conducting an investigation. So he had a foundation for those claims. Two, there were allegations regarding conflicts of interest between the canteen service and the VA, and Dr. Greenspan also had a basis for those claims. He founded those claims on the facts that Maya Canales, who was the business director of the VISN and reported to Patricia Cresetti, was married to Ralph Shaldes, who was an official in the canteen service, associate director, and he founded his claims on their marital relationship and the potential for improper financial benefit or the appearance of impropriety based on that, and those claims had also been submitted to the inspector general. For the same reasons that the inspector general found enough to investigate and was conducting an investigation at this time, Dr. Greenspan had a foundation for those claims. To determine whether the agency would have taken the same action against Dr. Greenspan absent his protected disclosures, three factors the court considers are the strength of the evidence, and as I've discussed, that was weak. The next factor is evidence of retaliatory motive, and there was direct evidence that Dr. Greenspan was disciplined because of his protected disclosures. At the doctor, I'm sorry. Is it a protected disclosure to say that someone's not ethical in a meeting attended by all their subordinates? Yes, Your Honor. For procedural purposes, the agency bifurcated the proceeding here and assumed that Dr. Greenspan's statements were protected disclosures, so the procedural posture that this case has been presented in, his allegations are assumed to be protected disclosures. The administrative judge has decided the case because he found the agency's affirmative defense was sustained. If you reverse and remand as we are requesting, that factual issue may be presented to the agency, but for purposes of this proceeding, they're assumed to be protected disclosures. The same as the questions about the Ph.D. qualifications or lack thereof, all of that is same standing? Right, same standing, Your Honor. And throughout the proceedings, the agency has put on evidence of Dr. Greenspan's disrespectfulness, and that respectfully is not charged conduct. The charged conduct was unfounded and defamatory, and so whether that personal comment was appropriate there is simply just not before the agency. They didn't charge him with being disrespectful to Ms. Corsetti. As evidence of retaliatory motive, the hospital director, Gary Campbell, who proposed the discipline of Dr. Greenspan said that the basis for his claims was irrelevant. Even though he was proposing suspension of him for unfounded and defamatory evidence, he specifically testified that the basis for those claims was irrelevant. After the March 1st meeting, Dr. Greenspan was called in by his chief of staff, Dr. Dobrin, and told that Dr. Vincent Alvarez, who is the chief medical officer for their visit and directly reports to Ms. Corsetti. Dr. Alvarez called Dr. Dobrin and told him that Dr. Greenspan needed to resign as medical staff representative and that the hospital would experience funding cuts likely if he did not resign. Dr. Dobrin also was the official who lowered the proficiency report score, and Dr. Dobrin specifically testified that he lowered the score because Dr. Greenspan calls central office too much, and Dr. Dobrin found that just absolutely very irritating. Finally, there was no evidence introduced in this case of similar discipline. So when you weigh the three factors, the weakness of the evidence supporting the discipline decision, the evidence of retaliatory motive, and the absence of evidence regarding similar discipline, it is clear that the agency has not sustained its burden. Dr. Greenspan respectfully requests that this court reverse and remand the agency to send a decision return to the agency for additional hearings so he can prove the merits of his claims. Thank you, Mr. Hess. Mr. Zinser. May it please the court. The petition's argument is largely irrelevant with respect to the claim that they're pursuing. The WPA claim does not call for a full review of the discipline that Dr. Greenspan faced, but only whether it was done for retaliation. The MSPB applied the proper standard, which was whether the agency can prove by clear and convincing evidence that it would have taken the same action absent the protected disclosure. It did assume, as my colleague at the bar said, it did assume that there were protected disclosures, and it concluded that the same result would have been reached with each of the three alleged disciplines, even if they were not protected disclosures. The first thing that the petitioner addresses is this Hawkins claim. They argue that the discipline was based on an uncharged violation. They claim that they were charged with it being unfounded and defamatory and punished for what amounted to insolence and disrespect. Your Honor, that's just not relevant. It has no relevance to the violation of the WPA, and it doesn't show improper motivation on behalf of the agency. There's something very hard to understand about all of this. Here we have Dr. Greenspan, and for the situation before us, he is a whistleblower, and we're told some of the things that he has reported that have been investigated and so on. The record also shows that his professional performance was highly rated in his position as a physician, and yet these actions are taken in a time frame which follows immediately upon this statement, this public statement, and yet we're told that these various actions, disciplinary actions and so on, had no relationship to any of this. In which case, where did they arise? What is their foundation? Your Honor, they absolutely had a relationship. They had a relationship to the statements that he made in that staff meeting. And just to be clear, his only claim is that the retaliation was for the March staff meeting outburst. He's not asserting that he was being retaliated against for his prior disclosures to the Inspector General, to Congress, and in other areas. What he was being disciplined for, there's three areas that he's saying he was disciplined for. The first was a reprimand. He definitely was reprimanded because of what happened in that meeting. He wasn't reprimanded because of the alleged disclosures that were made in the meeting. He was reprimanded for the way that he treated his superior at that meeting. That's what I'm trying to understand the difference. Was it his tone of voice for which he was reprimanded? You say it has nothing to do with the content of what he said. Yes, Your Honor. He was reprimanded because he made unfounded statements regarding nepotism, regarding the canteen. He made those statements regarding Ms. Corsetti's ethics. He made them in an aggressive and brusque way. If he had made those statements, Your Honor, for example, if he had made them instead of this presumed protected disclosure, but instead he had made them about Ms. Corsetti's, that she cheated at bridge, that she was a liar, she was a bad parent. Let's stick with the record. Those would be non-protected disclosures that were just as unfounded. The point being, Your Honor, that if he had made the statements not about allegedly protected things, but about other things, they clearly would have been grounds for a reprimand. That's not the issue. The issue is that the way the case reaches us, these were protected disclosures. The question of nepotism, the question of the canteen. There's two questions, Your Honor. The first is, was there evidence supporting the decision? He was charged with making unfound statements. With respect to nepotism, the board found that his statements were based on speculation, that he had no information about Ms. Corsetti's husband. He had no information about how her husband got the job. All that information, the same information was given to and pursued by the Inspector General. It was. In fact, he knew that the Inspector General had exonerated Ms. Corsetti in a previous investigation. The charge that he was challenged with was that he made unfounded statements. And if he made unfounded statements, regardless of whether they were allegedly protected or not, he could be punished and reprimanded for making them. With respect to the canteen, he acknowledged he had no information about whether the head of the canteen and her husband knew about the merger. He had no knowledge about how the canteen was funded. He was making statements, and with respect to the ethics, it was just an ad hominem attack. But that's only half the analysis. Under the case law, you balance the evidence for the supporting decision against the motive to retaliate. Now, Petitioner had aired his views in numerous venues, as I mentioned. There was no punishment made when he aired those views in those other venues. He was in a quasi-official position. In other words, he was the designated employee representative. At the staff meeting, Your Honor? Right. Yes, but... I'm sorry, Your Honor? For the facility. He was the representative, but that obviously didn't put him in a position where he could make any kind of attack that he wanted to against the superior. But more importantly... So you want us to decide if these statements were founded, despite the fact that we're told they're protected? You want us to look into the merits and decide if Dr. Cressetti was, in fact, the husband of the supervisor? Your Honor, we have the board's findings, which the petitioners have not provided substantial evidence for that they're inaccurate. The board has found that they were unsubstantiated. But moreover, the board found that this is all... You're saying those facts are before us for review? No. Well, to the extent that the petitioner has challenged them, but the petitioner hasn't put in any evidence, Your Honor. He hasn't challenged them. He has challenged whether the statements... conclusion that the statements were unfounded. But he has not provided evidence that they were true. That's the premise of this appeal, that these were protected disclosures. Your Honor, the premise of the appeal, because it's a WPA appeal, it's a comparison. It's a comparison about evidence supporting the decision and whether there's... the evidence and strength of that evidence, whether there was a motive to retaliate. The person who made the decision about the reprimand, Mr. Clark, he was not the subject of the disclosures. He was Ms. Cresetti's boss. He had received other disclosures in the past from the petitioner. He had not taken any action. It was only when Dr. Greenspan made these accusations, these unfounded accusations, in the meeting, at that point, Gary Campbell, the hospital director, proposed the action. And Mr. Clark was the deciding officer. Neither of them were implicated in the disclosures. In fact, Mr. Clark dropped the suspension, which had been proposed, and made it only a reprimand, which is the lowest level of punishment available, or one of the lowest. It involved no lost pay, no lost benefits. So the board found that there was, on this side of the scale, there was no motivation for retaliation. So to the extent that there's anything missing on this side of the scale, as far as evidence supporting the decision, it doesn't matter because they haven't shown a motive to retaliate. And if there's not that, then the whole whistleblower claim goes out the window. It's gone because that's the only thing that the court is here to consider. That's the only nature of the claim. Do I hear you saying that because it was a low level of reprimand, therefore, there's nothing to review? Whereas if it were a higher level, there would be a further basis for reviewing the petition? Not at all, Your Honor. But what I am saying is that because Mr. Clark made the decision to mitigate the penalty and to drop it down to the lowest level, that demonstrates, again, no motive to retaliate, which is the key that they have to show to establish, before we even get to the question of the evidence supporting the decision, the key that they have to show to establish their claim. With respect to the proficiency rating, again, we have Dr. Dorbin who made the decision to lower the rating. He also was not implicated in the disclosure about Ms. Cressetti. So again, we have no basis for retaliation. He offered testimony about why he lowered the rating. It was not the overall rating that was lowered. It was not that there was no change in that from the year before. What was lowered, that's at issue, was the rating on a subcategory, the personal qualities. And that was moved from high satisfactory to satisfactory. And the testimony was that that was because of his behavior, not because of the disclosures, but because of his behavior at the staff meeting, which was offensive to a number of people there, and would directly bear on the idea of personal qualities. But for which he wasn't charged. Well, the charging statement said that his statements were unfounded. And then it also, in the specifications, it noted that there were, let me get the exact words, Your Honor, that his conduct was blunt and arrogant. And so the manner in which he delivered what he delivered was relevant to the specification. And in Mr. Clark's reprimand letter, which is in the record of A340, Mr. Clark described his decision that he was considering in part the, quote, derogatory, quote, inflammatory, and, quote, inappropriate manner in which the petitioner behaved in that meeting. What is the charge that matters? Well, Your Honor, if this was a case where it was complete review, it wasn't brought up on a WPA, it would be the charge that matters. But because it's brought up in the context that it is, the charge is relevant. But the fact, if, I mean, and we believe that the agency met the charge. But the things that Mr. Clark were considering were also relevant in whether the agency, whether there was evidence supporting the agency's decision. I mean, basically what you have is, on this side is, did something happen outside of the, quote, protected disclosures? Did something happen that would warrant the reprimand and the minor alteration in the proficiency rating? You want us to go outside the record or what? Not at all, Your Honor. We believe that, I mean, the record is full on in favor of our position. The administrative judge made every finding necessary that it was clear and convincing evidence that both, that there was no motive to retaliate on either of these proposed, either of these disciplines or, and that they were, that there was evidence supporting them. The third one that the petitioners argued was this canceled leave, which the administrative judge found was not, I mean, was not taken as a discipline at all. It was just an inconvenience to the petitioner. He wasn't allowed to take three days that he wanted to because it's more important that somebody else be allowed to attend a leadership conference. I didn't hear them making a large issue out of it, but they've offered nothing to dispute the board's findings. Unless the court has any further questions, the petitioners haven't offered any evidence to demonstrate or to undermine the administrative judge and the board's findings that there was no motive to retaliate in taking these actions and that there was evidence supporting the board's decision, the agency's decision in taking these actions. As such, the, we asked the court to affirm the board's hold. Thank you, Mr. Dinser. Thank you. Mr. Hess. Mr. Riley, I'd like to respond to a few of the government's points. First, I'm not sure what their position, I thought at the beginning that they said it wasn't relevant at what Dr. Greenspan was charged with and Hawkins wasn't relevant, and it wasn't relevant whether they changed the charge. And at the end, I think he said that the charge was relevant. Just to read from respondent's brief, just to make sure, Dr. Greenspan has been, they have upheld the charge against him based on uncharged conduct. And on their brief in page 24, they say, the fact that no proposed action was taken against Dr. Greenspan after numerous disclosures were made supports a finding that it was the manner or forum, which they underlined, in which he made his accusations at the March 1st meeting that prompted the proposed discipline, not the statements themselves. So they're saying they disciplined him because of the manner or forum where he made the statements, which is not what they charged him with. They charged him with making unfounded and defamatory statements, not the statements themselves. So in their brief, they admit that he wasn't disciplined for what he was charged with. He was charged with making unfounded and defamatory comments, and they're saying they disciplined him because of the manner or forum. I respectfully say that evidence of whether he actually committed the conduct he was charged with is relevant, and it all favors Dr. Greenspan. Second, to clarify a point, they said Dr. Greenspan was aware of a previous IG Inspector General exoneration at the March 1st, 99 meeting. There were two Inspector General investigations of Ms. Cressetti and the nepotism. The first one had been resolved, I believe, sometime in 1997. But the matter was under investigation again at the time of the meeting based on Dr. Greenspan's letters, and that had not been resolved, and he was not aware of that at the time of the March 1st, 1999 meeting. Finally, they talked about evidence of retaliatory motive. And Dr. Greenspan's comments at this meeting were not limited to the conflict of interest and the nepotism. He made a lot of broad-ranging comments about VISN leadership in general. Physicians did not feel that their input was being taken seriously, that clinical decisions were being made, that bad decisions were being made, that reprisals were being taken against VA employees who brought these issues to the attention of VISN leadership. And then when Dr. Greenspan publicly aired this at the March 1st, 1999 meeting, he was the victim of another reprisal. And that's his contention, and that's what we're assuming is true for purposes of this hearing. And that is why Dr. Greenspan has, frankly, been outraged by the government and views this as a First Amendment issue, that as a government employee, he's protected by the First Amendment, and the VA should have listened to him as medical staff representative and not taken a retaliatory action against him. The evidence is clear. Dr. Dobrin testified. He lowered his proficiency report score because he called central office too much, and Dr. Dobrin just thought that was absolutely irritating. Ms. Cresetti's chief medical officer, Vincent Alvarez, tried to have Dr. Greenspan resign from his position as medical staff representative, told him via Dr. Dobrin that the hospital would likely experience cuts in funding if he didn't. The evidence of retaliatory motive is clear, and Dr. Greenspan was making allegations against the entire VISN leadership. He was singled out and disciplined for these two comments about Ms. Cresetti. But the fact that there's not direct evidence that Ms. Cresetti directed the reprimand does not show that there was no evidence of retaliatory motive. In fact, there was plenty. If there's no questions for these, Dr. Greenspan requests that you reverse and remand. Thank you, Mr. Hess. Mr. Densard, the case is taken into submission.